**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN OVERSIGHT<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br><br>*Defendant.* | Civil Action No. 1:26-cv-2212 (DLF) |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

I.   STATUTORY AND REGULATORY FRAMEWORK ..............................................4

    A.   The FOIA Statutory Framework .........................................................................4

    B.   The Department's Expedited Processing Regulatory Framework .....................5

II.  FACTUAL AND PROCEDURAL BACKGROUND.................................................6

    A.   AO's Recent Epstein-Related FOIA Requests and Unsuccessful Preliminary-Injunction Motion .........................................................................6

    B.   AO's Present Expedited Processing Requests .....................................................7

LEGAL STANDARD.............................................................................................................10

ARGUMENT...........................................................................................................................12

I.   AO WILL NOT SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION. ..................................................................................12

II.  AO IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS EXPEDITED PROCESSING CLAIM.................................................................................................18

    A.   AO Seeks Relief Not Available Under the FOIA..............................................19

    B.   AO Has Not Demonstrated an "Urgency to Inform the Public" that Requires Expedited Processing or Production by July 14. ..............................20

    C.   AO Has Not Demonstrated a "Widespread and Exceptional Media Interest" that Requires Expedited Processing or Production by July 14, 2026. ..........................................................................................................25

    D.   AO Failed to Exhaust Administrative Remedies...............................................26

III. THE PUBLIC INTEREST AND BALANCE OF EQUITIES WEIGH AGAINST A PRELIMINARY INJUNCTION. .........................................................27

    A.   Complying with a Preliminary Injunction on the Timeline Sought by AO Would Be Impracticable and Would Severely Burden Agency Resources. ..................27

    B.   The Public Interest Lies in Protecting FOIA's Orderly, Fair Framework....................28

    C.   The Court Should Limit Any Relief....................................................................30

CONCLUSION.................................................................................................................................31

## TABLE OF AUTHORITIES

### Cases

*Aguilera v. FBI,*
  941 F. Supp. 144 (D.D.C. 1996) ............................................................................................18

*Alcresta Therapeutics v. Azar,*
  318 F. Supp. 3d 321 (D.D.C. 2018) ................................................................................ 13, 17

*Al-Fayed v. CIA,*
  254 F.3d 300 (D.C. Cir. 2001) ........................................................................................*passim*

*Allied Progress v. Consumer Fin. Prot. Bureau,*
  No. CV 17-686-CKK, 2017 WL 1750263 (D.D.C. May 4, 2017) ........................................31

*Am. Immigr. Council v. DHS,*
  470 F. Supp. 3d 32 (D.D.C. 2020) ......................................................................................14

*Am. Oversight v. U.S. Dep't of Just.,*
  292 F. Supp. 3d 501 (D.D.C. 2018) .....................................................................................27

*American Oversight v. United States Department of Justice,*
  No. 25-cv-3200-JEB, 2026 WL 914925 (D.D.C. Apr. 3, 2026) .....................................*passim*

*Aviles-Wynkoop v. Neal,*
  978 F. Supp. 2d 15 (D.D.C. 2013) ......................................................................................13

*Baker v. Consumer Fin. Prot. Bureau,*
  No. 18-cv-2403, 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ................................................12

*Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.,*
  498 F. Supp. 3d 87 (D.D.C. 2020) ................................................................................ 11, 14

*CityFed Fin. Corp. v. Off. of Thrift Supervision,*
  58 F.3d 738 (D.C. Cir. 1995) ....................................................................................... 13, 19

*Citizens for Resp. & Ethics in Wash. v. FEC,*
  711 F.3d 180 (D.C. Cir. 2013) ....................................................................................... 5, 21

*Citizens for Resp. & Ethics in Washington v. Department of Justice,*
  436 F. Supp. 3d 354 (D.D.C. 2020) .....................................................................................28

*CREW v. CDC,*
  786 F. Supp. 3d 83 (D.D.C. 2025) .......................................................................................14

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
411 F. Supp. 3d 5 (D.D.C. 2019)..................................................................................14, 15, 18

*Daily Caller v. U.S. Dep't of State*,
152 F. Supp. 3d 1 (D.D.C. 2015).......................................................................... 18, 20, 21, 29

*Dorfmann v. Boozer*,
414 F.2d 1168 (D.C. Cir. 1969)..............................................................................................11

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) ................................................................................................................25

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Just. ("EPIC")*,
15 F. Supp. 3d 32 (D.D.C. 2014)............................................................................................12

*Florida EB5 Invs., LLC v. Wolf*,
443 F. Supp. 3d 7 (D.D.C. 2020)............................................................................................16

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975)................................................................................................16

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
920 F.3d 1 (D.C. Cir. 2019) ....................................................................................................11

*Heritage Found. v. EPA (Heritage I)*,
No. 23-748-JEB, 2023 WL 2954418 (D.D.C. Apr. 14, 2023) ..................................12, 14, 18

*Heritage Found. v. U.S. Dep't of Just.*,
No. 23-cv-1854-DLF, 2023 WL 4678763 (D.D.C. July 19, 2023) ........................................12

*Heritage Found. v. U.S. Dep't of State (Heritage III)*,
No. 24-2862-TJK, 2024 WL 4607501 (D.D.C. Oct. 29, 2024)....................................... 12, 13

*Hosp. Staffing Sols., LLC v. Reyes*,
736 F. Supp. 2d 192 (D.D.C. 2010) .......................................................................................11

*Howell v. DHS*,
2024 WL 4582978 (D.D.C. Oct. 25, 2024) ............................................................................17

*Judicial Watch, Inc. v. DHS*,
895 F.3d 770 (D.C. Cir. 2018)..................................................................................................5

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016).....................................................................................................13

*Long v. U.S. Dep't of Homeland Sec.*,
436 F. Supp. 2d 38 (D.D.C. 2006)..........................................................................................12

iv

*Munaf v. Geren,*
  553 U.S. 674 (2008) ........................................................................................................ 2, 11

*Mylan Pharms., Inc. v. Shalala,*
  81 F. Supp. 2d 30 (D.D.C. 2000)........................................................................................16

*N.Y. Times Co. v. Def. Health Agency,*
  No. 21-cv-566-BAH, 2021 WL 1614817 (D.D.C. Apr. 25, 2021)........................................12, 14, 15

*Nat. Res. Def. Council v. Pena,*
  147 F.3d 1012 (D.C. Cir. 1998)..........................................................................................16

*Navajo Nation v. Azar,*
  292 F. Supp. 3d 508 (D.D.C. 2018) ....................................................................................11

*Newdow v. Bush,*
  355 F. Supp. 2d 265 (D.D.C. 2005) ....................................................................................16

*Nken v. Holder,*
  556 U.S. 418 (2009) ..........................................................................................................11

*Oglesby v. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990)..............................................................................................28

*Open Am. v. Watergate Special Prosecution Force,*
  547 F.2d 605 (D.C. Cir. 1976)..............................................................................................4

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.,*
  263 F. Supp. 3d 293 (D.D.C. 2017) ............................................................................... 14, 25

*Sampson v. Murray,*
  415 U.S. 61 (1974) ............................................................................................................13

*The Nation Magazine v. U.S. Dep't of State,*
  805 F. Supp. 68 (D.D.C. 1992) ..........................................................................................32

*Wadelton v. U.S. Dep't of State,*
  941 F. Supp. 2d 120 (D.D.C. 2013) ....................................................................................12

*Washington Post v. DHS,*
  459 F. Supp. 2d 61 (D.D.C. 2006)................................................................................. 14, 30

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)......................................................................................................... 11, 29

**Constitutional Provisions**

U.S. Const. art. I, § 5, cl. 2 ..................................................................................................25

**Statutes**

5 U.S.C. § 552 .................................................................................................................*passim*

*Electronic Freedom of Information Act Amendments of 1996* ("EFOIA"),
   Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051–52 (1996) ....................................................6

**Regulations**

28 C.F.R. § 16.5 ...............................................................................................................*passim*

28 C.F.R. § 16.8 ....................................................................................................................28

**Other Authorities**

H.R. Rep. No. 104-795 (1996), reprinted in 1996 U.S.C.C.A.N. 3448 ........................................19, 21, 22

**INTRODUCTION**

Plaintiff American Oversight's ("AO") preliminary-injunction motion seeks expedited processing of two FOIA requests and the production of records from the top official at the U.S. Department of Justice in a matter of days—a timeline that would require circumventing standard FOIA processes, leapfrogging other expedited requests, and overriding the Department's considered decision to place the requests in its complex processing track. To be clear, AO's FOIA requests for the communications of Acting Attorney General ("Acting AG") Todd Blanche were not denied; its requests for expedited processing were. And with good reason because the purported urgency is unsupported by the facts. But the instant motion not only asks the Court to throw out the Office of Information Policy's ("OIP") determination that AO's requests do not warrant expedited processing; it also demands production of all non-exempt responsive records by a date certain rather than "as soon as practicable," the standard that applicable law prescribes to requests for expedited processing under the FOIA. 5 U.S.C. § 552(a)(6)(E)(iii). In short, AO wants this Court to grant it relief that it would not have been entitled to receive from the Department even if expedition had been granted. To make matters worse, the highly accelerated schedule AO proposes is based on the manufactured emergency of the Acting AG's mid-July confirmation hearing—but the Acting AG has been the functional head of the Department since early April 2026, and his status as a potential front-runner for the nomination of Attorney General has been known just as long. What's more, most of the communications at issue have allegedly existed for months or longer and could have been requested long ago.

AO's inconsistent actions point to a broader problem with its motion: it cannot carry its burden on irreparable harm. There is no dispute that the Department is processing AO's requests— nor will the documents' alleged importance to AO's mission dissipate after the Acting AG's confirmation hearing. The requested records will not lose their value after a confirmation vote because

1

the public's interest in assessing the Acting AG's qualifications and conduct will not evaporate after a Senate vote on his nomination; confirmed officials remain subject to public accountability and congressional oversight indefinitely.

Just three months ago, the Chief Judge in this District denied a nearly identical motion by the same plaintiff on the same posture, holding that AO did not establish it would suffer irreparable harm if its motion seeking documents on an expedited basis before a congressional hearing was denied. In *American Oversight v. United States Department of Justice*, No. 25-cv-3200-JEB, 2026 WL 914925 (D.D.C. Apr. 3, 2026), Chief Judge Boasberg denied AO's motion for production, in advance of a congressional deposition of the former Attorney General ("AG") Pamela Bondi, of documents related to training DOJ personnel on the review of files pertaining to Jeffrey Epstein. In support of its holding, the court determined that AO failed to show that "the value of the information" sought "would disappear or sharply decline after" the former AG's deposition; thus, AO had not shown irreparable harm. *Id.* at *5. That reasoning squarely applies here. To deny relief, the Court need not conclude that the topics to which AO's requests pertain are unimportant or that the requests themselves are not deserving of consideration. The Department has not taken that position. Instead, the Court need only apply the stringent harm standard required for "extraordinary" preliminary relief that AO's motion fails to meet. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).

Aside from the artificial urgency and absence of irreparable harm, AO's request fails on the merits. Neither of the standards for expedited processing on which AO relies applies here. First, a confirmation hearing, a routine constitutional proceeding, does not constitute the "current exigency" required for expedition of requests that involve an "urgency to inform the public about an actual or alleged Federal Government activity." 28 C.F.R. § 16.5(e)(1)(ii); *see Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001). The statutory standard of "compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), is narrowly construed; newsworthy status alone is insufficient; and records do not become time-sensitive merely

because they may be useful in a political proceeding. Second, alleged "widespread and exceptional" media interest is also insufficient. To prevail on this theory, AO must show that its requests concern a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). But AO relies on little more than the general journalistic interest in the Epstein and Smith matters overall to support its "widespread interest" theory and offers mere speculation as to how the requested communications, to the extent they exist, may be relevant to "questions about the government's integrity." *Id.* More is required at the preliminary-injunction stage, where AO must support its motion with evidence—not bald assertions.

Moreover, the equities and public interest favor the Department because AO's requested relief entails severe intrusions on the time, attention, and orderly processes of the Department's OIP and other affected Department components. Add to that the interests of other FOIA requesters, including those whose requests for expedited processing have been granted and others whose requests will be subordinated in OIP's FOIA processing queue should AO's motion be granted. Granting the motion would effectively reward one requester's strategic timing and litigation resources over others' statutory entitlements, creating perverse incentives for political organizations to litigate their way to the front of FOIA queues whenever high-profile governmental proceedings approach. This would fundamentally undermine a core principle of the FOIA: fair, uniform, and orderly treatment of all requesters.

In brief, AO seeks to jump the line in the FOIA request process. It asks this Court not only to reverse the Department's decision on expedited processing but also to order that processing and production be completed by a date certain—a result not contemplated in the FOIA statute. The Court should not bless AO's attempt to jump the line at the expense of other FOIA requesters and OIP's limited FOIA resources to acquire records that it could have sought earlier and for which AO has not

established a need by the requested production date of July 14, 2026. The extraordinary remedy AO seeks is not warranted here. The Department respectfully requests that this Court deny AO's motion for a preliminary injunction.

## BACKGROUND

### I.    STATUTORY AND REGULATORY FRAMEWORK

#### A.    The FOIA Statutory Framework

The FOIA directs that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. *See, e.g.*, 28 C.F.R. § 16.5(a) (U.S. Department of Justice "[c]omponents ordinarily will respond to requests according to their order of receipt"); *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 614–16 (D.C. Cir. 1976) (holding first-in/first-out approach is generally consistent with the FOIA). The FOIA establishes strict timelines for agency responses. An agency "shall determine" within twenty business days of receiving a FOIA request "whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency such adverse determination." 5 U.S.C. § 552(a)(6)(A)(i). When "unusual circumstances" exist, an agency may extend the response deadline by written notice to the requester, providing up to ten additional business days of extension. *Id.* § 552(a)(6)(B)(i).

An agency must generally make and communicate its "determination" within the statutory period. *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180, 182–86 (D.C. Cir. 2013). If the agency has made and communicated such a "determination" in a timely manner, the requester is required to administratively appeal that determination before bringing suit. *Id.* If the agency fails to issue a timely determination, the requester may file a complaint without exhausting administrative

remedies. *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 775 (D.C. Cir. 2018). However, so long as "the agency is exercising due diligence in responding to the request," the court may retain jurisdiction and allow the agency additional time to complete its review and processing of records. 5 U.S.C. § 552(a)(6)(C)(i).

In 1996, Congress amended FOIA to provide for "expedited processing" of certain requests. *See Electronic Freedom of Information Act Amendments of 1996* ("EFOIA"), Pub. L. No. 104–231, § 8, 110 Stat. 3048, 3051–52 (1996), codified at 5 U.S.C. § 552(a)(6)(E). When granted, expedited requests must be processed "as soon as practicable" and placed at the front of an agency's processing queue, ahead of non-expedited requests but behind other expedited requests already in the queue. 5 U.S.C. § 552(a)(6)(E)(iii). Congress directed agencies to permit expedited processing when: (i) a requester demonstrates "compelling need," defined as either an imminent threat to life or safety, or urgency to inform the public about federal government activity, *id.* § 552(a)(6)(E)(i), (v); or (ii) the agency determines other circumstances warrant expedition, *id.* § 552(a)(6)(E)(i)(II). When an agency denies an expedited processing request, judicial review is limited to the administrative record at the time of the determination, *id.* § 552(a)(4)(B), (6)(E)(iii)—preventing requesters from supplementing weak requests with new arguments or post-determination events in federal court. *See Al-Fayed*, 254 F.3d at 304–07.

## B.   The Department's Expedited Processing Regulatory Framework

Pursuant to the FOIA, the Department has promulgated detailed regulations governing requests for expedited processing. 28 C.F.R. § 16.5(e). DOJ permits requests for expedited processing to be made at any time. *Id.* § 16.5(e)(2). Under those regulations, "requests and appeals shall be processed on an expedited basis whenever it is determined that they involve":

> (i)    Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

(ii)     An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;

(iii)    The loss of substantial due process rights; or

(iv)     A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1)(i)-(iv).

The Department's regulations establish procedural requirements for requests for expedited processing. A requester seeking expedited processing "must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." *Id.* § 16.5(e)(3). For requests based on 28 C.F.R. § 16.5(e)(1)(ii) (commonly referred to by the Department as expedition "standard (ii)"), a requester must establish "a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally." *Id.*

Department components must adjudicate requests for expedited processing within ten calendar days of receipt. *See id.* § 16.5(e)(4). If expedited processing is granted, "the request shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable." *Id.*

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     AO's Recent Epstein-Related FOIA Requests and Unsuccessful Preliminary-Injunction Motion

On July 29, 2025, AO submitted three FOIA requests to DOJ and the Federal Bureau of Investigation ("FBI") seeking records pertaining to: (1) the training materials and guidance provided to personnel reviewing the Epstein investigative holdings; (2) the roles of Attorney General Bondi and FBI Director Kash Patel in directing the review; and (3) whether reviewing personnel raised concerns or dissent regarding the review's conduct. Compl. ¶ 23, *American Oversight v. U.S. Dep't of Justice*, 1:25-

cv-03200-JEB (D.D.C. filed Sep. 15, 2025), ECF No. 1. The requests were directed to three components of DOJ: (1) OIP; (2) Office of Legal Counsel ("OLC"); and (3) the FBI. *Id.* ¶¶ 31–32, 41. In August 2025, shortly after receipt of these requests, each component sent a letter acknowledging receipt and noting that because unusual circumstances existed, response times would be extended. *Id.* ¶¶ 34, 38, 42.

AO sought a preliminary injunction in this district seeking production of the requested documents in advance of former AG Bondi's congressional deposition. Chief Judge Boasberg denied the motion after rejecting the argument that a congressional proceeding warranted circumventing standard FOIA procedures. *Am. Oversight*, 2026 WL 914925, at *5. Although the court found that AO had demonstrated that "the requested documents would be highly probative for an imminent event— Bondi's April 14 deposition," it also found that AO "falter[ed]" on the question whether "the utility of the records would be lessened or lost" after that event. *Id.* at *4–*5. Boasberg concluded that "[t]here is no reason to think that the information Plaintiff seeks would become stale or irrelevant if produced after April 14." *Id.* at *5. The court further held:

> Indeed, if the documents were truly revelatory, the House could call Bondi back for another hearing, the same way the House Oversight Committee voted to depose her after her February 2026 testimony before the House Judiciary Committee. Similarly, a Senate committee could make inquiries. Simply put, the Epstein brouhaha is not going away any time soon.

*Id.* Because "the sought-after records in th[at] case, conversely, will continue to be of value to public debate after the deposition," Boasberg found that AO "ha[d] not made the requisite showing of irreparable harm to support its Motion." *Id.*

### B.   AO's Present Expedited Processing Requests

Todd Blanche has served as the Deputy Attorney General since March 5, 2025. He assumed the role of Acting Attorney General on April 2, 2026. Two months later, the President formally nominated the Acting AG to become the next Senate-confirmed Attorney General. *See* Compl. ¶ 1

(ECF No. 1). Subsequently, on June 12, 2026, AO submitted two FOIA requests to DOJ seeking communications of Acting AG Blanche pertaining to various matters including Jeffrey Epstein and Ghislaine Maxwell ("Request 1"), and Volume II of Special Counsel Jack Smith's final report ("Request 2"). *See id.* ¶ 36. AO sought expedited processing for both requests, claiming an "urgency to inform the public" and "widespread and exceptional media interest" based on the Acting AG's upcoming (though not yet, at the time, scheduled) confirmation hearing. *See* Compl. ¶¶ 40–46, 54–60.

AO's Request 1 seeks "[a]ll email communications . . . sent or received by Todd Blanche and containing both a key term from Column A [Epstein; Maxwell] and a key term from Column B [review*; redact*; Trump; DJT; POTUS; exemption*; "DOE 174"; "DOE174"; "DOE-174"; transfer*; "Bureau of Prisons"; BOP; "limited immunity"; "FCI Tallahassee"; "FPC Bryan"]" from March 10, 2025, through May 7, 2025. Request 1 also seeks "[a]ll text messages and messages on messaging platforms . . . sent or received by Todd Blanche and containing the term 'Epstein'" from March 10, 2025 through May 7, 2025. *See* Compl. ¶ 37; Velella Decl. ¶ 12.

Request 2 seeks "[a]ll email communications . . . sent or received by Todd Blanche and containing both a key term from Column A [Smith; "special counsel"; Lago; classified; mishandle; mishandled; mishandling; records; documents; Cannon; publish*; release*; MAL] and a key term from Column B ["volume II"; "vol II"; "vol. II"; "volume 2"; "vol 2"; "vol. 2"]" from December 1, 2025, through December 31, 2025; January 23, 2026, through February 23, 2026; and April 2, 2026, through May 2, 2026. Request 2 also seeks "[a]ll text messages and messages on messaging platforms . . . sent or received by Todd Blanche and containing any of the key terms listed below ["Jack Smith"; Cannon; "volume II"; "vol II"; "vol.II"; "volume 2"; "vol 2"; "vol.2"]" from December 1, 2025, through December 31, 2025; January 23, 2026, through February 23, 2026; and April 2, 2026, through May 2, 2026. *See* Compl. ¶ 51; Velella Decl. ¶ 12. Both of AO's requests require searches of multiple records systems for communications spanning several months of 2025 and early 2026.

In its requests for expedited processing, AO outlined an allegedly urgent need to inform the public about the Acting AG's official activities in connection with the review of the Epstein files and the release of Volume II, citing the Acting AG's upcoming confirmation hearing. *See* Compl. ¶¶ 25–26, 36. AO emphasized purported widespread and exceptional media coverage of the Acting AG's nomination and his prior work as President Trump's personal defense attorney. *See id.* ¶¶ 15–16, 22. AO sought expedited processing for both requests under two standards discussed above, 28 C.F.R. § 16.5(e)(1)(ii) (standard (ii)) and 28 C.F.R. § 16.5(e)(1)(iv) (commonly referred to by the Department as "standard (iv)"). Compl. Exs. A, C. With respect to Request 1, AO asserted that "there is an urgent need to inform the public about the nature of Mr. Blanche's involvement in the review and redaction of files on Mr. Epstein's criminal activity ahead of Mr. Blanche's imminent confirmation hearing in the U.S. Senate," and that "the public has an urgent need for more information on Mr. Blanche's involvement in the review of the files ahead of his expected testimony before the Senate Judiciary Committee, particularly as questions of Mr. Blanche's impartiality and loyalty to the President—for whom he has served as a personal attorney—persist." Compl. Ex. A at 8. AO made similar arguments in Request 2 regarding the release of Volume II. Compl. Ex. C at 7–10.

On June 22, 2026, OIP denied AO's requests for expedited processing. *See* Compl. ¶¶ 47–48; Compl. Ex. B-D; Velella Decl. ¶¶ 14–15. Regarding standard (ii), OIP determined that AO had not established "a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally," and noted that it cannot "identify any specific reason to conclude that obtaining the requested documents is time sensitive." Compl. Ex. B. OIP further noted that it considered: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Id.* As to standard (iv), OIP directed AO's expedited processing requests

9

to the Director of DOJ's Office of Public Affairs ("OPA"). OPA concluded that Plaintiff failed to demonstrate exceptional and widespread media interest in which there exist possible questions about the government's integrity that affect public confidence and therefore denied expedited processing under standard (iv). *See id.* Ex. D. AO's requests were both assigned to DOJ's complex processing track because of, inter alia, the need for multi-component coordination. *Id.*

On June 23, 2026, AO filed its complaint challenging the denials of expedited processing. Compl., ECF No. 1. On June 26, 2026, AO filed the pending motion for a preliminary injunction. ECF No. 5. AO's motion seeks an order granting its requests for expedited processing. Proposed Order, ECF No. 5-2. Beyond the relief requested from the Department, AO also asks the Court to order the Department "to process [its] June 12, 2026, Freedom of Information Act requests identified in the Complaint, ECF No. 1, and make their production of responsive, non-exempt records and an index justifying any records withheld by July 14, 2026." *Id.*

## LEGAL STANDARD

"It is rare that *any* preliminary relief is appropriate in a FOIA case." *Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf*, 553 U.S. at 689–90; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In requesting such relief, "[t]he moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted," *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010), and that "normal legal avenues are inadequate . . . to give the plaintiff the relief he seeks." *Dorfmann v. Boozer*, 414 F.2d 1168, 1174 (D.C. Cir. 1969). To obtain such an "extraordinary remedy," a movant must demonstrate it is "entitled to such relief" upon a "clear showing." *Winter*, 555 U.S. at 22. It takes more than "a run-of-the-mill case" to establish that kind of relief. *Brennan Ctr.*, 498 F. Supp. 3d at 92. A movant must establish the traditional *Winter* factors: (1) "likelihood of success on the merits;" (2)

10

"likely to suffer irreparable harm in the absence of preliminary relief;" (3) "balance of equities tip[ping] in [its] favor"; and (4) "that an injunction is in the public interest." 555 U.S. at 20 (citations omitted). "The last two factors 'merge when the government is the opposing party.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Failure to show likelihood of irreparable harm or likelihood of success on the merits, standing alone, is sufficient to defeat the motion. *Brennan Ctr.*, 498 F. Supp. 3d at 96; *see also, e.g.*, *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018). Additionally, if, as here, a mandatory injunction is requested—*i.e.*, an injunction that "would alter, rather than preserve, the status quo by commanding some positive act"—the moving party must meet a higher standard by showing clearly that it is entitled to relief or that extreme or very serious damage will result from denial. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Just.* ("*EPIC*"), 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

On top of that already high threshold is the standard for a production order in a FOIA case. District courts have routinely rejected motions in FOIA cases seeking an expedition order or production by a date certain through the preliminary injunction vehicle. *See, e.g., N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566-BAH, 2021 WL 1614817, at *1 (D.D.C. Apr. 25, 2021); *Heritage Found. v. EPA (Heritage I)*, No. 23-748-JEB, 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023), *appeal dismissed*, No. 23-5086, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023); *Heritage Found. v. U.S. Dep't of Just.*, No. 23-cv-1854-DLF, 2023 WL 4678763, at *5 (D.D.C. July 19, 2023); *Heritage Found. v. U.S. Dep't of State (Heritage III)*, No. CV 24-2862-TJK, 2024 WL 4607501, at *1 (D.D.C. Oct. 29, 2024); *Baker v. Consumer Fin. Prot. Bureau*, No. 18-cv-2403, 2018 WL 5723146, at *6 (D.D.C. Nov. 1, 2018); *EPIC*, 15 F. Supp. 3d at 49; *Long v. U.S. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006). That makes sense because prevailing on a motion seeking production of documents entails clearing the high hurdle of "at a minimum, demonstrat[ing] [the movant's] entitlement to expedited processing." *Am. Oversight*, 2026 WL 914925, at *3; *id.* at *4 ("[T]o this Court's knowledge, no court in this district has ever granted

11

a production preliminary injunction without first finding expedited processing warranted or noting that the Government had already agreed to expedite processing."). The party seeking expedited processing bears the burden of showing that expedition is appropriate. *Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013). Judicial review of an agency's denial of expedited processing is limited to "the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii); *see Al-Fayed*, 254 F.3d at 304–07.

## ARGUMENT

### I.    AO WILL NOT SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

As an initial matter, the Court should deny the motion because AO will not suffer irreparable harm if its motion is denied. Irreparable harm is an indispensable requirement for preliminary injunctive relief. The standard for irreparable harm in FOIA cases is high, and courts have found it met if records relate to an "imminent event" with "irreversible consequences." *Am. Oversight*, 2026 WL 914925, at *4. AO cannot meet that standard. Thus, the motion should be denied because, even if AO could demonstrate a likelihood of success on the merits of its arguments about "urgency" or "widespread and exceptional media interest"—which it cannot, as discussed in section II below—AO still will not suffer irreparable harm from the denial of a preliminary injunction here.

**1.** "[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61 (1974)); *see also Heritage III*, 2024 WL 4607501, at *4. To be irreparable, the harm must be "*certain* and *great*, actual and not theoretical, and *so imminent* that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (emphases added) (citation modified). AO has the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence

12

into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm . . . .'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013). The harm must be to the plaintiff itself. Because "injuries to third parties are not a basis to find irreparable harm," *Alcresta Therapeutics v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018), a movant cannot merely point to interests of nonparties—such as "the public" or Congress—to justify relief. Here, therefore, AO "must show irreparable harm to [its] own role in the public conversation." *Heritage I*, 2023 WL 2954418, at *6.

**2.** The standard for irreparable harm, always demanding, becomes even more so in the FOIA context. Especially in this context, injunctive relief is "extraordinary and rarely granted." *Am. Oversight*, 2026 WL 914925, at *5. Although, "where an obligation to disclose exists, a plaintiff *may* suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate," *Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) (emphasis added), "[i]t is not enough that the records are 'indisputably valuable in informing the public' about newsworthy topics," *CREW v. CDC*, 786 F. Supp. 3d 83, 90 (D.D.C. 2025) (quoting *N.Y. Times Co.*, 2021 WL 1614817, at *8). "If the irreparable-harm test turned only on the importance of the records, then preliminary injunctions would become the norm." *Id.* Instead, the requested information must be "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost," *Heritage I*, 2023 WL 2954418, at *4; *accord N.Y. Times Co.*, 2021 WL 1614817, at *8 (quoting *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019)). Such "event[s]" are those with *irreversible* consequences and that have been found to include impeachment proceedings, congressional elections, census apportionment processes, and military strikes overseas. *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 7; *Washington Post v. DHS*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006); *Brennan Ctr.*, 498 F. Supp. 3d at 94; *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 300–01 (D.D.C. 2017).

**3.** AO fails to identify any imminent event with irreversible consequences to which its requests pertain, and after which the requested records' value would be lessened or lost. A confirmation hearing—a routine governmental process—is not an "imminent event" with irreversible consequences. *See Am. Oversight*, 2026 WL 914925, at *4; *cf. Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12 (requiring records to be essential to integrity of imminent event); *N.Y. Times Co.*, 2021 WL 1614817, at *8 (denying relief absent "scheduled or imminent event"). AO will retain whatever interest it has in the requested records after the Acting AG's confirmation vote, and any public-accountability value the requested records may have will persist as well. In sum, any utility and importance the records AO seeks may have would not expire on July 14 (or July 16, 2026).

AO cites no authority to the contrary; moreover, the cases it cites involve different types of events than a confirmation hearing. *See* Mem. in Supp. of Pl. AO's Mot. for Prelim. Inj., ("PI Br.") 17–19, ECF No. 5-1; *see also infra* pp. 18–19 (discussing cases cited by AO). Again, it is not enough to argue that records sought on an expedited basis are "the subject of current national debate." *Contra* PI Br. 19. Although AO contends that "[t]he window for the public to learn about and meaningfully engage their senators on" the Acting AG's involvement with the Epstein files review process or the potential release of Volume II of Special Counsel Smith's final report "is rapidly closing," *id.* at 17, that is plainly not accurate. The requested records, to the extent they exist, will remain valuable for oversight and historical purposes if processed in the currently assigned complex queue. The public can review and comment on the forthcoming FOIA responses, call their Senators, demand congressional investigations, and so on—now or later. Indeed, an implication of AO's position is that the requested records were not crucial to public accountability while the Acting AG was performing all the duties of the AG over the past three months, but they are crucial now that he has been formally nominated to occupy the AG role. That is absurd.

Relatedly, AO's own delay in submitting its FOIA requests undermines any claim of genuine urgency. For example, the Department's Epstein files review process has been a subject of media coverage since the spring of 2025, Compl. ¶ 7, yet AO waited more than a year to submit its request for and seek expedited processing of the Acting AG's communications related to that matter from a March 10, 2025, through May 7, 2025, time period. *See, e.g.*, *Al-Fayed*, 254 F.3d at 310; *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."); *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) (motion for preliminary injunction may be denied "[i]f the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay[]"). AO offers no explanation for this delay. It suggests that the matter became more urgent after the Acting AG was nominated and his confirmation hearing became imminent, PI Br. 1–2, but those events have long been foreseeable. The D.C. Circuit has found a delay of 44 days before seeking an injunction "inexcusable," *see Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975), and courts in this district have found that a delay of over two months "militates against a finding of irreparable harm," *see Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000), and a delay of four months "undercut[]" the plaintiff's "asserted harms, *Florida EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 13 (D.D.C. 2020). This Court similarly has ample basis for concluding that AO's lack of urgency in seeking relief betrays a lack of imminent, irreparable injury.

**4.** Chief Judge Boasberg's April 3, 2026, opinion denying AO's request for expedited processing of Epstein-related records in advance of former AG Bondi's congressional deposition contains analysis directly applicable here, in a case that also involves (in part) records pertaining to the review of the Epstein files. "In denying the preliminary injunction," the court did "not discount the public value of the documents" AO sought. *Am. Oversight*, 2026 WL 914925, at *5. Instead, the court

emphasized, "the importance of sought-after information is not the test for securing a preliminary injunction." *Id.* "If that were the standard, such injunctions would be the norm, not the exception." *Id.* As in the prior AO case, the records AO presently seeks here, to the extent they exist, "are already set to arrive in a timely fashion for the public conversation surrounding" the Epstein review process and the Volume II Nondisclosure Order. *See id.* Thus, there is "no need to make use of an extraordinary and rarely granted equitable remedy." *See id.*

**5.** AO argues that Congress and the public need the records it seeks, but it may not manufacture irreparable harm by conflating its interests with those of Congress and the public. AO does not stand in the shoes of Congress or represent its institutional interests. The fact that the requested records may arguably be "highly probative" or "essential to" the House Oversight Committee's oversight activities—which the Department does not concede—does not suffice to show that AO will itself suffer irreparable harm if the preliminary injunction is denied. *See Howell v. DHS*, 2024 WL 4582978, at *5 (D.D.C. Oct. 25, 2024). As a non-governmental organization and FOIA requester, AO cannot assert that it will suffer irreparable injury from a delay that does not prevent Congress from requesting or obtaining the records at issue through the confirmation process or otherwise. The Senate has several methods by which it can obtain documents; its unwillingness or inability to exercise that authority cannot be transmuted into AO's allegation of irreparable harm. That is to say, AO cannot use the Senate's alleged need for documents as its justification for expedited processing, particularly when the Senate has several tools available to obtain documents it determines are necessary for confirmation proceedings. The potential interests of Congress and the public in the records sought by AO's FOIA requests are categorically distinct from AO's own interests (in, for example, the publication and dissemination of information) for purposes of the irreparable harm analysis. *See Alcresta Therapeutics*, 318 F. Supp. 3d at 326 (noting that "injuries to third parties are not a basis to find irreparable harm"); *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 13 (D.D.C. 2015)

16

(analyzing the harm question as whether "any injury the plaintiff will experience absent the requested injunction will irreparably hinder *its* ability to continue *its* coverage" (emphases added)). AO's claim that Congress and the voting public require expedited disclosure does not establish irreparable harm to AO itself, which remains able to publish and disseminate information whenever records are ultimately received. Thus, AO has not shown that "the utility of the records" for its purposes "would be lessened or lost" after the confirmation hearing. *See Heritage I*, 2023 WL 2954418, at \*4.

**6.** The cases cited by AO do not alter this analysis. For example, *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996), involved a criminal defendant facing grave punishment and an imminent evidentiary hearing. *Id.* at 146–51. AO, by contrast, is an organization with no personal legal stake in the Acting AG's confirmation hearing. It faces no "grave punishment" from denial of expedited processing; there is no imminent legal proceeding that will determine AO's individual rights; and the records sought are not materials exclusively within government control that are essential to AO's own defense. *See id. Center for Public Integrity* addressed imminent governmental action that the court found would have irreversible consequences in the context of ongoing impeachment proceedings. 411 F. Supp. 3d at 5. The court found irreparable harm because "the value and import of the information requested by Plaintiff [was] directly tied to the current, ongoing impeachment proceedings." *Id.* at 12. The court emphasized that "the primary value of the information [lay] in its ability to inform the public of ongoing proceedings of national importance; and, in these circumstances, 'stale information is of little value.'" *Id.* at 12. Here, by contrast, the same basis AO asserts for the importance of the Acting AG's communications regarding the Epstein document review process and Volume II of the final Smith report would apply before, during, and the Acting AG's confirmation hearing. Such communications do not become "stale" after a confirmation hearing or vote; they remain equally probative for public accountability and congressional oversight long after the hearing or vote concludes. *See id.*

For these reasons, AO cannot show that it will be irreparably harmed by denial of a preliminary injunction. That alone is sufficient to deny its Motion for a Preliminary Injunction. *See CityFed Fin. Corp.*, 58 F.3d at 747.

## II.    AO IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS EXPEDITED PROCESSING CLAIM.

"[T]he specified categories for compelling need are intended to be narrowly applied." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795 at 26 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3469)). That is because, "[g]iven the finite resources generally available for fulfilling FOIA requests," widespread granting of expedited processing would undermine the statute's design. *Id.* (quoting H.R. Rep. No. 104-795, at 26 (1996)). In support of its merits argument, AO argues that there is "urgency to inform the public concerning actual or alleged Federal Government activity," and it offers two theories for why that is the case. 5 U.S.C. § 552(a)(6)(E)(v)(II). Both theories fail. A confirmation hearing is a routine governmental proceeding that does not establish "compelling need" under § 552(a)(6)(E)(v). The requested records—historical communications from various time periods—are not time-sensitive documents that will lose their value after a hearing concludes. On the contrary, records responsive to AO's requests will remain equally valuable for purposes of public accountability and congressional oversight whether disclosed under the FOIA before, during, or after the Acting AG's confirmation hearing. As noted above, the Acting AG has been serving in the role of AG since April of this year. If AO's concern were grounded in informing the public or Congress about the Acting AG's fitness to lead the Department, AO could and should have submitted its FOIA requests months ago. Indeed, as to the requested records concerning the Epstein document review, the review process and the Acting AG's role have been a matter of public reporting for more than a year. Request 1 could have been submitted last year. Instead, AO has put the Court in the position of deciding whether to override the Department's denial of expedited processing and order production of

18

documents over a less-than-one-month timeline. This wholly unnecessary rush should not be rewarded.

### A.      AO Seeks Relief Not Available Under the FOIA.

The FOIA statute does not provide an avenue for production of records by a date certain—not even for expedited requests. The Department has neither refused to comply with AO's FOIA requests nor withheld information pursuant to FOIA exemptions, *see* 5 U.S.C. § 552(a)(4)(B); rather, OIP placed Plaintiff's requests in its complex processing queue after considering whether expedited processing was warranted. Simply put, FOIA does not entitle requesters to documents whenever they want them. So even if AO established that expedited processing is warranted here—and it has not—it still would not have shown an entitlement to production of the documents any sooner than "as soon as practicable." *Id.* § 552(a)(6)(E)(iii). The Department has established that, due to OIP's FOIA litigation caseload and the nature of AO's requests, the production of all responsive, non-exempt records, and an index of withholdings, by July 14, 2026, is not practicable. *See* Velella Decl. ¶¶ 5, 29–38.

AO's reliance on the "twenty days" standard in 5 U.S.C. § 552(a)(6)(A)(i) is misplaced. That just means that the agency must make a decision on "whether to comply with" a FOIA request by that time—not produce all the non-exempt documents by that time. "FOIA does not require *production* of all responsive, non-exempt documents within twenty days of receiving a request." *Daily Caller*, 152 F. Supp. 3d at 10. "A determination is different from the actual production of underlying records, and simply communicates 'the scope of the documents [an agency] intends to produce and withhold, and the reasons for withholding any documents.'" *Am. Oversight*, 2026 WL 914925, at *1 (citing *Daily Caller*, 152 F. Supp. 3d at 10, and then quoting *CREW*, 711 F.3d at 188). So AO's "request for an order requiring the agency to complete production of all records responsive to its various FOIA requests

within twenty days therefore finds no support in either the statute or binding precedent." *Daily Caller*, 152 F. Supp. 3d at 10.

### B. AO Has Not Demonstrated an "Urgency to Inform the Public" that Requires Expedited Processing or Production by July 14.

There is no "urgency" that would require processing and production of the requested records, to the extent they exist, by July 14 for two overarching reasons. First, the Acting AG's exercise of significant public trust and power as a senior Department official is old news. Second, even if the pending nomination were relevant to the urgency question, no urgency exists to inform the public about *these particular alleged communications*—especially not on the highly condensed timeline sought by AO. Thus, the consequences of processing AO's request in OIP's complex processing queue would not compromise any "significant recognized interest." *See Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795 at 26).

Under the FOIA statute, AO must demonstrate an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The applicable Department regulation further requires that such a requester establish "a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally." 28 C.F.R. § 16.5(e)(3). Courts assess the "urgency to inform" the public by considering three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. This test does not support AO's requests for expedited processing.

**1.** AO's requests do not concern a matter of "current exigency to the American public." Todd Blanche has been the Deputy Attorney General ("DAG") since March 2025. He has been the Acting AG since April 2026—more than three months. That he enjoyed a significant likelihood of being

20

nominated to formally assume the AG role has been known at least since then. In short, AO's stated reason for urgency—that the Acting AG is on the precipice of assuming a position of significant oversight over the Department—fails on its own terms because he has acted in such positions as the DAG and Acting AG for well over a year.

In any event, the fact that a confirmation hearing may attract media attention does not transform it into a matter of "current exigency." "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795 at 26). The FOIA statute's provision regarding expedited processing is designed to facilitate disclosure of information about emergent or rapidly developing government activities. *See id.* A confirmation hearing is a routine governmental process that does not constitute the type of current exigency contemplated by FOIA's "narrow" expedited processing framework. *See id.*

Conflating general public interest with the statutory requirement of an "urgency to inform the public," 5 U.S.C. § 552(a)(6)(E)(v)(II), AO relies on its perception of public attention to the general topics of the Epstein document review and the Smith investigation. This reliance fails. First, almost all the events AO relies on to support the alleged "urgency to inform the public" took place weeks, months, or even longer ago; have nothing to do with the subject matter of the specific requested records; or both:

- The Acting AG's "work history as President Trump's personal defense attorney" in 2024, which took place well over a year ago. PI Br. 2–3.

- His service as Deputy Attorney General beginning in March 2025, well over a year ago. *Id.* at 3.

- "[P]ublic scrutiny and media coverage," as well as "congressional scrutiny," during the Acting AG's "2024 nomination and February 2025 confirmation as Deputy Attorney General," well over a year ago. *Id.*

- A March 26, 2026, article about the Acting AG's comments regarding "firings and departures of multiple DOJ personnel who worked on the investigations or prosecutions led by former Special Counsel Jack Smith," published over three months ago. *Id.* at 4.

- Testimony by former AG Bondi in May 2026 regarding the Acting AG's role in the Epstein document review, which took place many weeks ago and well before AO submitted its requests. *Id.* at 5.

- The Acting AG's 2025 interview with Ghislaine Maxwell and her "subsequent transfer to a lower security federal prison," which took place almost one year ago. *Id.* at 6.

- The Acting AG's role with respect to the Anti-Weaponization Fund, which AO does not attempt to connect to the subject matter of either of its requests and on which it instead appears to rely for the proposition that the Acting AG's activities are "controversial." *Id.* at 6.

The scattershot nature of these events demonstrates that AO cannot justify why it needs the communications it seeks *now*. *Cf. Al-Fayed*, 254 F.3d at 310 (holding that waiting years after events to submit a request for expedited processing, even for newsworthy matters, fails to demonstrate current exigency because "none of the events at issue is the subject of a currently unfolding story").

Second, as to more recent events or media reports, they only underscore that the relevance of the requested records, if any, will not disappear after the Acting AG's confirmation hearing. For example, that Representative James Comer stated a few weeks ago that he wants the Acting AG to testify regarding the Epstein files review, PI Br. 5–6, underscores that the Epstein-related

communications sought by AO here will not substantially diminish in value if not rushed out the door by the impracticable deadline of July 14, 2026. The same goes for a June 10, 2026, New York Times Magazine article making claims about the Acting AG's role in the "public-facing strategy surrounding the Epstein Files," *id.* at 6; Compl. Ex. A at 9 n.36, and a June 2, 2026, article discussing an interview in which the Acting AG spoke about documents relating to the Smith investigation being found in a room at the Department of Justice, PI Br. 4; Compl. Ex. C at 8 n.27.

AO cites no authority to the contrary. Tellingly, it does not cite a single case in which an upcoming confirmation hearing for an already-serving and previously Senate-confirmed public official supports an "urgent" need to inform the public regarding that official's communications. Instead, it argues that the "existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic." PI Br. 13 (quoting 28 C.F.R. § 16.5(e)(3)). Although that standard "can" support expedited processing in some cases, 28 C.F.R. § 16.5(e)(3), it does not here. The existence of articles about the Acting AG and the Epstein files or the Smith investigation does not show that the public must urgently be informed *by AO* as to what the Acting AG may have said in communications about those topics. Indeed, if the particular records sought by AO were essential to questioning the Acting AG during his confirmation hearing, Congress could deploy its tools to seek them, just as it has used its subpoena power to obtain testimony from witnesses during confirmation proceedings. *See* U.S. Const. art. I, § 5, cl. 2 (congressional power of inquiry); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504–07 (1975) (discussing congressional investigative power). Congress does not need AO to conduct its document gathering on its behalf. That reality further undermines AO's claim of urgency.

Also undermining the claim that the Department wrongly failed to credit the supposed urgency is that at the time AO submitted its FOIA requests, the Acting AG's confirmation hearing had yet to be scheduled. When reviewing an agency's denial of expedited processing, the Court is confined to

the administrative record as it existed at the time of the agency's decision. *Al-Fayed*, 254 F.3d at 304–07; *see* 5 U.S.C. § 552(a)(4)(B). On the record before DOJ when it adjudicated AO's requests for expedited processing, "[n]o date for th[e] hearing ha[d] yet been set, although news sources report[ed] that it [would] likely be scheduled in July 2026." Compl. Ex. A at 8 n.28. Any events occurring after AO submitted its requests are irrelevant to judicial review on the merits and cannot cure the deficiencies in AO's requests for expedited processing. Indeed, AO appears to concede as much. *See* PI Br. 16–17 n.3 (arguing that the post-request scheduling of the Acting AG's confirmation hearing and reporting on the probable timing of a vote may be considered in support of the irreparable harm analysis even though "the analysis of a requester's likelihood of success on the *merits* is restricted to information 'available to the agencies "at the time of the [expedited processing] determination[s].""" (emphasis added) (brackets in original) (quoting *Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 300)).

**2.** Nor does processing within the complex queue "compromise a significant recognized interest." *See Al-Fayed*, 254 F.3d at 310. The only "interest" AO asserts in its requests for expedited processing is its interest in informing the public and Congress about the Acting AG's role in the Epstein document review and in reviewing the Smith investigation. But even assuming the requested records—email and text message communications from various time periods—supported AO's alleged interest in disseminating information about those topics, they will not become stale or lose their utility after a confirmation hearing. To the contrary, communications from the Acting AG regarding the Epstein document review and the Smith investigation would be similarly useful, if at all, to the public, to Congress, and to future oversight efforts regardless of whether they are produced before, during, or after a confirmation hearing. As Chief Judge Boasberg's opinion rejecting AO's similar motion for production of other requested Epstein review-related documents noted, "[t]here is no reason to think that the information Plaintiff seeks would become stale or irrelevant if produced after April 14," particularly because, "if the documents were truly revelatory, the House could call

Bondi back for another hearing." *Am. Oversight*, 2026 WL 914925, at *5. Chief Judge Boasberg recognized the obvious: Senate-confirmed government officials remain subject to public accountability and congressional oversight long after confirmation votes conclude, and the historical record does not expire based on voting schedules. Here, the Department's denial of expedited processing of additional communications will not prevent public understanding of the Acting AG's official activities or compromise congressional oversight.

**C.    AO Has Not Demonstrated a "Widespread and Exceptional Media Interest" that Requires Expedited Processing or Production by July 14, 2026.**

AO cites journalistic coverage of the Acting AG's nomination as evidence of "widespread and exceptional media interest." PI Br. 10, 13–14. Similarly, it relies on general reporting about the Epstein files and the Smith investigation. *Id.* at 12. But "widespread and exceptional media interest" in overarching topics does not, standing alone, establish a basis for expedited processing of particular FOIA requests. 28 C.F.R. § 16.5(e)(1)(iv). Rather, such interest must be coupled with evidence of "possible questions about the government's integrity that affect public confidence." *Id.* And the "Department has interpreted subsection (iv) to require that the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence." *Am. Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501, 505 (D.D.C. 2018) (citation omitted).

AO relies on little more than speculation about the records it seeks to support its argument on this issue. For example, it points to "congressional members seeking Mr. Blanche's testimony about the Epstein [f]iles, and nineteen survivors of Jeffrey Epstein's crimes voicing their opposition to his nomination." PI Br. 14. But congressional oversight efforts and political opposition to a nomination do not necessarily raise "possible questions about the government's integrity" with respect to the requested records. *Id.* at 13. Similarly, a "poll" showing purported doubts by members of the public about the Trump Administration's effect on accountability for Epstein associates, *id.* at 14, is far too

25

general to show that *these requests*—seeking the Acting AG's communications containing terms related to the Epstein document review—themselves involve a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Once again, AO cites no authority to the contrary. At a minimum, AO has not shown that its requests involve a matter of widespread *and exceptional* media interest. For example, AO has not shown that media interest in the Smith investigation and Epstein document review is "exceptional" compared to interest in other topics.

Because AO has not carried its burden to show it is likely to succeed on the merits of its requests for expedited processing, the Court should deny its motion.

### D.    AO Failed to Exhaust Administrative Remedies.

The Court should deny the motion for the independent reason that AO has not exhausted its administrative remedies. AO does not allege that it filed an administrative appeal of OIP's determination on expedited processing, and to the Department's knowledge, it did not. *See* Velella Decl. ¶ 15. "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). "The statutory scheme in the FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request." *Id.*; *see also, e.g.*, 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa); 28 C.F.R. § 16.8(a). Assuming (without conceding) that AO could litigate *solely* the denial of expedited processing in this action without first exhausting an administrative appeal, *see Citizens for Responsibility & Ethics in Washington v. Department of Justice*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020), AO's motion goes beyond that. In effect, AO seeks a determination on the merits, demanding not only expedited processing but also that OIP actually produce "responsive, non-exempt records and an index justifying any records withheld by July 14, 2026." Proposed Order, ECF No. 5-2.

26

AO has not exhausted its remedies as to that request. Not disputing that it did not *actually* exhaust the administrative appeal process, AO stated in its complaint that it "is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(6)(E)(iii)." Compl. ¶ 32. But constructive exhaustion (the doctrine AO appears to invoke) applies only if the agency "fail[ed] to comply with the applicable time limit provisions" in FOIA. 5 U.S.C. § 552(a)(6)(C)(i). OIP has not failed to comply with any FOIA time limits. Thus, constructive exhaustion cannot rescue AO's premature attempt at litigation.

## III.    THE PUBLIC INTEREST AND BALANCE OF EQUITIES WEIGH AGAINST A PRELIMINARY INJUNCTION.

Along with the merits and alleged harm to the plaintiff, the Court must consider whether a preliminary injunction would be in the public interest. *See Al-Fayed*, 254 F.3d at 303. To do so, the Court must "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). The balance of equities and the public interest weigh decisively against granting a preliminary injunction. *See id.* Neither factor favors disrupting the orderly FOIA process for all other requesters.

### A.    Complying with a Preliminary Injunction on the Timeline Sought by AO Would Be Impracticable and Would Severely Burden Agency Resources.

The Department's limited time and resources would be heavily burdened by the preliminary injunction. Complying with a production order by July 14, 2026, would severely impose on the time and attention of OIP, which must process many other requests for production, including expedited processing requests, with a limited staff. Velella Decl. ¶¶ 29–33. The balance of equities further tips in Defendant's favor by the practical impossibility of complying with AO's demand for expedited production. The Department has submitted a contemporaneous declaration explaining why it is not feasible for OIP, the office responsible for handling FOIA requests on behalf of the Offices of the AG and DAG, to produce the requested records within the timeframe AO demands. *See id.* ¶¶ 37–39.

27

Although the Department's search for potentially responsive records is not complete and the exact nature and scope of the potentially responsive records is not yet known, what is known is that review and production at the extremely rapid pace demanded by AO raises serious concerns regarding the protection of highly sensitive law enforcement information, investigative deliberations, attorney-client privileged materials, work product, and the private identifying information of witnesses and victims. *See Daily Caller*, 152 F. Supp. 3d at 14 (recognizing that a responding agency "has a responsibility to balance the public's interest in disclosure with equally important public and private interests in safeguarding potentially sensitive information"). These practical constraints necessarily affect the feasibility of expedited processing and production and provide independent support for the reasonableness of the Department's denial of expedited processing.

### B.    The Public Interest Lies in Protecting FOIA's Orderly, Fair Framework.

Granting a preliminary injunction would fundamentally undermine a core principle of the FOIA: fair, uniform treatment for all requesters and orderly processing of FOIA requests. *Washington Post*, 459 F. Supp. 2d at 76, cited by AO, illustrates the government's substantial interest in maintaining FOIA processing procedures. *See id.* at 76 (recognizing agency interest in resource allocation). While courts recognize the public interest in disclosure, *Washington Post* does not establish that this interest supersedes the government's legitimate need to allocate finite resources according to FOIA statutory processing procedures. *See id.* (discussing resource constraints). Here, forcing the Department to meet an artificial deadline for a single requester due to a scheduled political event would harm all other FOIA requesters whose requests would be deprioritized. *See Al-Fayed*, 254 F.3d at 310 (cautioning against "unduly generous use" of expedited processing that would "unfairly disadvantage other requestors"). The balance of equities therefore favors denying expedited processing and allowing the Department to allocate resources fairly across all pending requests consistent with existing statutory criteria.

The public interest is not served by a preliminary injunction that burdens the Department's resources, disrupts the processing of other requests awaiting agency attention, and rewards one requester's ability to litigate over other requesters' statutory entitlements. Rather, the public interest lies in maintaining a predictable, fair, and orderly FOIA process such that agency resources are fairly allocated based on statutory criteria. Granting AO's motion would harm the public "interest in ensuring that agencies have sufficient time to review materials for responsiveness and exemptions, and the interest of other third-parties in not having their FOIA requests bumped down in the queue and consequently delayed." *Allied Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686-CKK, 2017 WL 1750263, at *7 (D.D.C. May 4, 2017) (footnote omitted).

More specifically, the public interest requires that expedited processing remain available for genuine emergencies. The FOIA's expedited processing mechanism exists to address threats to life or physical safety, or true (not manufactured) urgency to inform the public concerning actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E)(v). It is not a mechanism for elevating one requester's preferred timeline above all others, especially if that timeline is driven by political events such as confirmation hearings. Here, a significant portion of the harm from granting AO's preliminary injunction would fall on other FOIA requesters who have been granted expedited processing, who would be pushed farther back in the expedited processing queue. *See* Velella Decl. ¶¶ 5, 33, 38. Every dollar and every work hour devoted to processing AO's FOIA requests according to its requested schedule is a dollar and work hour not available for processing other requests that have been granted expedited processing.

If countenanced, AO's strategy would also wreak havoc on agencies and the courts. Granting any FOIA requester's demand to immediately receive, pre-confirmation hearing, broad categories of records potentially relevant to a nominee would create enormous burdens. AO's self-described mission to inform members of the public "in time to engage their senators" simply cannot support

29

ordering the Department to process all requested records by mid-July. PI Br. 15. In weighing AO's interest against the harm to other requesters that would result from a preliminary injunction awarding AO its requested relief, it is clear that granting AO's motion would be contrary to the first-in/first-out multi-track basis on which agencies generally process FOIA requests.

In sum, the FOIA was intended to be available to all members of the public, not just those who are professional FOIA requesters or who have the resources to file a complaint in district court and move for preliminary injunctive relief. It is unfair, particularly on this record, for AO to jump ahead of other requesters who filed their FOIA requests earlier, and who are waiting patiently in line for their requests to be processed. *See The Nation Magazine v. U.S. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding entry of preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of the FOIA"). Granting relief would create perverse incentives and send the message that requesters whose preferred deadlines align with high-profile governmental proceedings can circumvent statutory procedures to leapfrog other requesters who have been granted expedited processing.

## C.     The Court Should Limit Any Relief.

Finally, even if the Court is inclined to grant AO's motion, it should not require production by July 14. It should instead, at most, order that expedited processing be completed "as soon as practicable," consistent with the statutory standard when expedited processing is granted. Thus, if the Court were inclined to agree that AO satisfied the preliminary-injunction factors, the Court could order that AO's requests be moved from the back of the complex processing queue (where they currently stand because they were submitted relatively recently) to the back of the expedited processing queue. Because AO has not shown that it needs the documents by July 14, even if it otherwise satisfied the requirements for expedited processing, forcing the Department to comply with such a compressed timeline would be especially improper.

30

## CONCLUSION

For the reasons discussed above, the Court should deny AO's motion for a preliminary injunction.

July 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ELIZABETH HEDGES
Senior Counsel to the Assistant
Attorney General, Civil Division

ELIZABETH SHAPIRO
Deputy Director

*/s/ Kian K. Azimpoor*
KIAN K. AZIMPOOR (DC Bar No. 90024613)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel:  (202) 598-0860;
Fax:  (202) 616-8470
E-mail:  kian.k.azimpoor@usdoj.gov

*Counsel for Defendant*

31